# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD WEHRENBERG, | |
| Plaintiff, | |
| | Civil Action No. 2:14-cv-01477 |
| v. | |
| | Judge Mark R. Hornak |
| METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, | |
| Defendant. | |

## OPINION

**Mark R. Hornak, United States District Judge**

In this insurance coverage case, the Plaintiff, Edward Wehrenberg ("Wehrenberg"), rented his house out to a man named Alphonso Hyman, who, according to Wehrenberg, "vandalized" the house and stopped making rent payments to the mortgage company, which resulted in damage to the property, lost rental payments, foreclosure of the property, and damage to Wehrenberg's credit. The house was insured by an insurance policy ("Policy") (ECF No. 1-2, at 21–50; ECF No. 1-3), which was issued by the Defendant, Metropolitan Property and Casualty Insurance Company ("Metropolitan"). Wehrenberg filed a claim for vandalism damage with Metropolitan. Metropolitan declined to pay, so here we are.

When Wehrenberg filed this lawsuit, he brought claims solely against Metropolitan for breach of contract and bad faith. Metropolitan filed a motion for judgment on the pleadings. The Court heard oral argument during which Plaintiff's counsel requested leave to amend his Complaint, specifically to allege facts showing that the breach of contract claim was not barred by a suit limitations clause in the Policy. ECF No. 29, at 11. The Court granted Plaintiff's counsel leave to amend his Complaint generally. *Id.* at 33. Thereafter, the Plaintiff filed an

Amended Complaint (ECF No. 22).[1] In a moment of what appears to be somewhat belated inspiration, Plaintiff also filed a Motion for Joinder of Additional Defendant (ECF No. 26)—the additional Defendant being Alphonso Hyman, who is treated as a resident of Pennsylvania (although he is in federal prison in West Virginia) and whose presence in the case would destroy diversity and wrest jurisdiction from this Court. Then, not surprisingly, a Motion to Dismiss for Lack of Jurisdiction (ECF No. 24) was filed by Plaintiff.

For the reasons that follow, the Court will deny plaintiff's Motion for Joinder of Additional Defendant, order that all references to Alphonso Hyman as a defendant be stricken from the Amended Complaint, and deny the Motion to Dismiss for Lack of Jurisdiction.

## I. BACKGROUND

Here's the story as told by Mr. Wehrenberg in both the original Complaint (ECF No. 1-2) and the Amended Complaint (ECF No. 22). He owned a house located at 226 Sheryl Lane, Pittsburgh, Pa 15221("226 Sheryl Lane"), which was insured by a homeowners insurance policy issued by Metropolitan. ECF No. 1-2, at ¶ 4; ECF No. 22, at ¶ 4.[2] 226 Sheryl Lane was subject to a mortgage held by Wells Fargo. ECF No. 1-2, at ¶ 5; ECF No. 22, at ¶ 7. In October 2011, Wehrenberg leased 226 Sheryl Lane to Alphonso Hyman. ECF No. 1-2, at ¶ 6; ECF No. 22, at ¶ 8. Under the agreement, Hyman was to lease 226 Sheryl Lane for five years starting in November, 2011, and Hyman was to pay each month's rent directly to the mortgage company. ECF No. 1-2, at ¶ 7; ECF No. 22, at ¶¶ 8–9. An option in the lease gave Hyman the right to purchase 226 Sheryl Lane by doing this. ECF No. 1-2, at ¶ 9; ECF No. 22, at ¶ 10.

---

[1] Plaintiff also filed a Motion for Leave to Amend Caption of Amended Complaint in which he seeks to correct a few errors in the caption of his Amended Complaint. ECF No. 23.

[2] As is seen from these parallel record citations, the tale of Wehrenberg's interactions with Hyman remained factually constant between the original Complaint and the Amended Complaint.

In early 2012, Hyman stopped making his monthly rent payments, and around June 2012 Wehrenberg received notice from the mortgage company that foreclosure proceedings had begun. ECF No. 1-2, at ¶ 11–12; ECF No. 22, at ¶¶ 11–12. Wehrenberg called and emailed Hyman unsuccessfully and so he visited 226 Sheryl Lane around June 24, 2012, where he found that the locks had been changed. ECF No. 1-2, at ¶ 13–15; ECF No. 22, at ¶ 13–14. Wehrenberg looked through the windows and saw that "[i]n essence, the place was gutted done [*sic*] to the bare studs." ECF No. 22, at ¶ 15; ECF No. 1-2, at ¶ 16. Wehrenberg was then able to get ahold of Hyman on the phone (the next day) and told him that he (Hyman) did not have permission to gut the house or to do any work on 226 Sheryl Lane and that the property had been damaged. ECF No. 1-2, at ¶¶ 17–20; ECF No. 22, at ¶¶ 16–18. Hyman responded that he was a contractor, that the house had major structural problems that he had decided to fix and which required him to gut the house, and that he would put the house back together. ECF No. 1-2, at ¶ 21–22; ECF No 22, at ¶ 19–20.

Wehrenberg did not notify Metropolitan of this turn of events, but instead he allowed Hyman to continue his "work" on the property. ECF No. 1-2, at ¶ 23; ECF No. 22, at ¶ 21. Wehrenberg told Hyman to get the mortgage caught up and to get the house put back together as soon as possible, which Hyman did. ECF No. 1-2, at ¶ 24–25; ECF No. 22, at ¶ 22–23. In January 2013, Wehrenberg noticed that a rental payment was late and called Hyman, who assured Wehrenberg that payment would be made by January 15, 2013 and that the house was coming along. ECF No. 1-2, at ¶ 27; ECF No. 22, at ¶ 25. But Hyman never made the payment. Wehrenberg called Hyman again but found that the phone was disconnected, so Wehrenberg went to 226 Sheryl Lane and found not only that the first floor was in the same disassembled condition but that the basement and second floor had been gutted also. ECF No. 1-2, at ¶ 28–30; ECF No. 22, at ¶ 27. Three bathrooms, flooring, bedroom walls, closets, furnaces, and air

3

conditioner had all been removed. ECF No. 1-2, at ¶ 28–30; ECF No. 22, at ¶ 27. The furnaces and air conditioners had, however, been replaced. ECF No. 1-2, at ¶ 31; ECF No. 22, at ¶ 27.

On February 28, 2013, Wehrenberg filed a claim with Metropolitan, asserting that the property had been vandalized. ECF No. 1-2, at ¶ 36; ECF No. 22, at ¶ 32. Wehrenberg says that the Metropolitan adjuster came out to take pictures of the damages and "threatened to leave the premises" almost immediately, told Wehrenberg that Metropolitan would not cover the claim, and was "short" with him (Wehrenberg). ECF No. 1-2, at ¶ 37; ECF No. 22, at ¶ 33. After that, Wehrenberg says he called Metropolitan regarding his claim but was "pushed from agent to agent and many times his phone calls were not returned." ECF No. 1-2, at ¶ 38; ECF No. 22, at ¶ 40. Wehrenberg eventually lost the house to foreclosure (though no foreclosure date was included in either the Complaint or the Amended Complaint). ECF No. 1-2, at ¶ 34; ECF No. 22, at ¶ 30. Metropolitan has never made an offer of settlement under the policy. ECF No. 1-2, at ¶ 46–49; ECF No. 22, at ¶ 47–49.

On September 10, 2014, Wehrenberg filed this lawsuit in the Court of Common Pleas of Allegheny County, Pennsylvania. ECF No. 1, at ¶ 1. Metropolitan was served on September 30, 2014. *Id.* at ¶ 3. Metropolitan removed the case on October 29, 2014, pursuant to 28 U.S.C. §1332 on the basis of diversity of citizenship jurisdiction. *Id.* at ¶¶ 4–7. Metropolitan filed an Answer on November 5, 2014, ECF No. 5, and Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) on January 9, 2015, ECF No. 13. Metropolitan argued that it could not be liable for breach of contract because the facts in the Complaint failed to allege vandalism. ECF No. 14, at 7. Metropolitan further argued that the losses are not covered because the policy contains an exclusion for "Defective, Inadequate, Faulty, or Unsound Repair, Construction, Renovation or Remodeling." *Id.* at 11. Because it says that no insurance coverage exists to cover the losses, Metropolitan argued that the bad faith claim must also be dismissed. *Id.* at 13.

4

Finally, Metropolitan claimed that, because the policy's one-year suit limitation clause bars any actions not brought within twelve months of the loss, Wehrenberg's Complaint was filed six months late and was therefore time-barred. *Id.* at 13–14.

The Court heard oral argument on Metropolitan's Rule 12(c) Motion on February 4, 2015. During the argument, the Court asked Plaintiff's counsel why the suit limitations clause did not bar the breach of contract claim as a matter of law.[3] ECF No. 29, at 10. Plaintiff's counsel responded that waiver and estoppel should prevent the application of the suit limitations clause at the Rule 12(c) stage.[4] *Id.* While Plaintiff's Response to the Motion for Judgment on the Pleadings generically alluded to these doctrines, it offered no backup for their application, ECF No. 16, at 15, so the Court asked why the facts indicating that such principles apply in this case were not pled in the Complaint or why Plaintiff had not moved to file an Amended Complaint to include them. *Id.* at 11. Plaintiff's counsel's response was to then make an oral motion for leave to file an Amended Complaint, which the Court granted. *Id.* at 11, 30–32.[5]

Wehrenberg then filed an Amended Complaint (ECF No. 22); a Motion to Amend/Correct the Amended Complaint in which he seeks to change a few typographical and other errors (ECF No. 23); a Motion for Joinder of Additional Defendant (ECF No. 26) and

---

[3] Our Court of Appeals has explained the so-called "Third Circuit Rule" as follows: "While the language of Fed.R.Civ.P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Robinson v. Johnson*, 313 F.3d 128, 135 n.3 (3d Cir. 2002) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994)).

[4] The Court asked Plaintiff's counsel what facts he intended to allege in an amended complaint that would show that the suit limitations clause did not apply to the breach of contract claim, to which Plaintiff's counsel responded: "The facts that we would articulate as far as waiver and estoppel is that Mr. Weinberg – Wehrenberg had interaction with a named partner who drafted the denial letter indicating to him that this in no way is going to be held against you." ECF No. 29, at 11–12. Both at oral argument and in the Amended Complaint, Wehrenberg's counsel stated that this named partner in the Defendant's law firm did this in writing, in an email. ECF No. 22, at ¶¶ 62–63. While Wehrenberg attached 64 pages of documentary Exhibits to his Amended Complaint, they do not include such an email.

[5] The Court also granted Metropolitan's oral motion for leave to amend its Answer to include an affirmative defense that Wehrenberg failed to provide timely notice of the vandalism to Metropolitan. ECF No. 29, at 29–30.

accompanying brief (ECF No. 27); and a Motion to Dismiss for Lack of Jurisdiction (ECF No. 24) and accompanying brief (ECF No. 25). Metropolitan filed a brief in opposition to Wehrenberg's Motion for Joinder (ECF No. 32) and a brief in opposition to Wehrenberg's Motion to Dismiss for Lack of Jurisdiction (ECF No. 33). Wehrenberg filed a reply to these briefs (ECF No. 34). The Court has considered all pending Motions and supporting documents, along with the matters laid out in the prior papers of record and at oral argument.

## II. STANDARD OF REVIEW

"A plaintiff generally may join defendants in an action if the plaintiff (1) asserts a right to relief arising out of the same transaction or occurrence, and (2) 'any question of law or fact common to all defendants will arise in the action.'" *Hayden v. Westfield Ins. Co.*, 586 F. App'x 835, 839 (3d Cir. 2014) (quoting Fed. R. Civ. P. 20(a)(2)(A)-(B)). But section 1447(e) provides: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e).

## III. DISCUSSION

Wehrenberg has moved to join an additional defendant, Alphonso Hyman, the tenant to whom Wehrenberg rented his house. Wehrenberg seeks to bring a count against Hyman for breach of contract. ECF No. 22, at 19–22. The facts that comprise the basis for this breach of contract claim were well known to Wehrenberg when he filed his Complaint. How do we know this? Because the original Complaint alleges that Hyman failed to make mortgage payments on the property (ECF No. 1-2, at ¶¶ 11–12, 27–29), that Hyman gutted the property without permission (*Id.* at ¶¶ 16–23), that Hyman gutted the property some more after being told to return it to its original condition (*Id.* at ¶ 30), that Hyman's acts constituted vandalism (*Id.* at ¶¶ 43, 46, 50–52), and that Hyman's actions were the direct cause of losses and damages to the

6

home in excess of $100,000.00, loss of rental income in excess of $36,000.00, the loss of the property by eventual foreclosure, and damage to his credit (*Id.* at ¶¶ 32–35). Simply put, there is nothing new here factually about what Hyman allegedly did or when he did it.

In a recent opinion, *Hayden v. Westfield Ins. Co.*, 586 F. App'x 835 (3d Cir. 2014), the Third Circuit addressed the situation faced by the Court here and affirmed the district court's decision (this Court's decision) not to allow a plaintiff-insured to join an additional defendant late in the game that would have destroyed diversity jurisdiction:

> Because the District Court would have lacked subject matter jurisdiction over the Haydens' claims against DRS, the Court had the option either to deny joinder or to permit joinder and remand the action to state court. *See* 28 U.S.C. § 1447(e). While we have not yet addressed the appropriate analytical approach to § 1447(e) (and need not do so here), the Fifth Circuit has instructed that when a district court is "faced with an amended pleading naming a new nondiverse defendant in a removed case, it should scrutinize that amendment more closely than an ordinary amendment," and should consider "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory in asking for amendment, whether the plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987); *see also City of Perth Amboy v. Safeco Ins. Co. of Am.*, 539 F.Supp.2d 742, 746 (D.N.J. 2008) (noting that district courts within the Third Circuit have adopted the *Hensgens* approach).

*Hayden*, 586 F. App'x, at 840–41 (alterations and footnote omitted).[6]

The *Hayden* Court, though not explicitly adopting the Fifth Circuit's approach in *Hensgens*, appears to have implicitly approved of its use in the § 1447(e) context. Furthermore, district courts within this Circuit rely on the analytical framework set forth in *Hayden*. *See Davis v. Supervalu, Inc.*, No. 14-6505, 2015 WL 505423, at *2 (E.D. Pa. Feb. 5, 2015); *Tiversa Holding Corp. v. LabMD, Inc.*, No. 13-1296, 2014 WL 6774169, at *2 (W.D. Pa. Dec. 1, 2014); *Sussman v. Capital One, N.A.*, No. 14-01945, 2014 WL 5437079, at *4 (D.N.J. Oct. 24, 2014).

---

[6] The *Hayden* Court concluded that this Court's decision to deny joinder was a proper exercise of discretion because, among other things, the plaintiffs could "easily and timely" have filed suit against the additional defendant in state court. *Hayden*, 586 F. App'x, at 841.

7

On top of that, even before the Third Circuit's opinion in *Hayden*, district courts in the Third Circuit were already following *Hensgens*. *See, e.g., Groh v. Monestero*, No. 13-1188, 2013 WL 1809096, at *3–4 (E.D. Pa. Apr. 29, 2013); *Stewart v. Wal-Mart Distribution Ctr.*, No. 12-4958, 2013 WL 1482217, at *2 (E.D. Pa. Apr. 11, 2013); *Midthassel v. Aramark Corp.*, No. 9-5515, 2010 WL 2521977, at *4–5 (D.N.J. June 15, 2010); *Wabby v. State Farm Mut. Auto. Ins. Co.*, No. 9-2449, 2010 WL 1754754, at *2 (M.D. Pa. Apr. 27, 2010); *Castle Cheese, Inc. v. Blue Valley Foods, Inc.*, No. 8-1158, 2008 WL 4890851, at *2 (W.D. Pa. Nov. 12, 2008).

The Court is to first consider the extent to which the Motion for Joinder is designed to defeat jurisdiction. District courts have generally concluded that if a plaintiff was aware, at the time the complaint was filed, of the activities of the non-diverse defendant, the later attempt to join that defendant will be viewed as an attempt to defeat diversity:

> In cases in which it was apparent that the plaintiff knew about the non-diverse defendant's activities at the time the suit was originally brought in state court, but still chose not to include that party as a defendant, the courts have viewed any later attempt to add the non-diverse defendant as nothing more than an attempt to destroy diversity.

*Sussman v. Capital One, N.A.*, 2014 WL 5437079, at *4 (quoting *Salamone v. Carter's Retail, Inc.*, 2010 WL 762192 (D.N.J. Mar.5, 2010)); *see also, Marker v. Chesapeake Life Ins. Co.*, 2011 WL 2670004, at *3 (E.D. Pa. July 6, 2011) ("Under certain circumstances, courts have found that when a plaintiff knows about the non-diverse defendant's activities at the time the complaint was originally filed but does not include that person as a party, subsequent attempts to join that person as a party will be viewed as an attempt to destroy diversity.") (internal quotation marks and alterations omitted); *City Line-Hamilton Builders, LLC v. Cincinnati Ins. Co.*, 2013 WL 1286187, at *5 (E.D. Pa. Mar. 29, 2013) ("Relevant circumstances include whether the defendants sought to be joined were known to the plaintiffs at the time of filing the original complaint, or if plaintiffs gained additional information after filing the original complaint.").

As demonstrated by Wehrenberg's Complaint and Amended Complaint, Wehrenberg was fully aware of Hyman's activities long before the filing of this lawsuit in state court.[7] Why didn't Wehrenberg sue Hyman originally? Hard to say, but perhaps one possible explanation was a belief that Hyman could be judgment-proof, since Wehrenberg knew and pled that "Mr. Hyman was incarcerated for distributing drugs." ECF No. 1-2, ¶ 42. In any event, the "no new facts" factor weighs heavily in favor of denying joinder.

The second factor is whether the plaintiff has been dilatory. District courts differ on the amount of time that must pass before finding a plaintiff dilatory. For instance, in *Stewart v. Wal-Mart Distribution Ctr.*, 2013 WL 1482217, at *3, the court concluded that the plaintiff was not dilatory in waiting three months before seeking to amend the complaint and naming two additional defendants. The court noted, however, that the plaintiff was not aware of the role the two additional defendants played in the alleged wrongdoing at the time the complaint was filed. *Id.*; *see also, Montalvo v. John Doe I*, No. 10-2617, 2010 WL 3928536, at *4 (E.D. Pa. Oct. 5, 2010) (finding, after considering both the length and nature of the delay, that "three months was reasonable here, especially in light the fact that plaintiff moved [to join the new defendants] within two weeks of learning their names"); *but see Doe No. 4 v. Soc'y for Creative Anachronism, Inc.*, No. 7-1439, 2007 WL 2155553, at *1 (E.D. Pa. July 25, 2007) (denying

---

[7] Wehrenberg's attempt to manufacture a reason for this late joinder of Hyman in many ways "taxes the credulity of the credulous." *Maryland v. King*, 133 S. Ct. 1958, 1980 (2013) (Scalia, J., dissenting). First, he says, "Plaintiff's contract claim is legitimate and not an attempt to cobble together facts so as to defeat federal jurisdiction." ECF No. 25, at 7. He says that "Hyman's "recent deposition provided insight into how this case needed to be tried," *id.*, but he never stated exactly what this "insight" was. As Metropolitan notes in its brief in opposition, Mr. Hyman was deposed on January 15, 2015 but "Plaintiff made no attempt at that time to join him. It was only after the argument on the Motion for Judgment on the Pleadings that Plaintiff decided to join Mr. Hyman . . . ." ECF No. 32, at 10. More precisely, at oral argument three weeks after Hyman's deposition, Plaintiff's counsel never raised the possibility of joining Hyman, for an "insight" based reason, or any other. Second, Wehrenberg says that "Hyman's credibility [is] critical to Metropolitan's success," and that "[t]he contract claim brings Hyman into the same courtroom so a jury can judge his believability which, in turn, will contribute to the success or failure of Metropolitan's position that this was not an act of vandalism." *Id.* But there is no reason why Hyman cannot still be brought into the courtroom during the trial against Metropolitan as a witness. It is readily apparent that until these recent filings, Wehrenberg's plan was to sue Metropolitan and Metropolitan alone. Wehrenberg has simply failed to offer any plausible reason for desiring to add Hyman to the case now other than a desire to dodge federal jurisdiction.

motion to join a non-diverse defendant four months after complaint was filed and less than one month after removal). The analysis of dilatoriness may also be indicative of a plaintiff's motives in seeking to join a non-diverse defendant: "[t]he timing of plaintiff's motion, although also relevant to the second factor of the *Hensgens* test, can be circumstantial evidence of plaintiff's motive and purpose for joining a non-diverse defendant." *City Line-Hamilton Builders,* 2013 WL 1286187, at *5. In this case, Wehrenberg filed the case on September 10, 2014 but did not move to join Hyman as a defendant until February 26, 2015. There are no circumstances in this case that excuse/explain this five and a half month delay. Unlike the situation in *Stewart* and *Montalvo,* Wehrenberg did not learn anything new about Hyman that he did not already know when the action was filed.[8] The timing of the Motion to Join Hyman therefore appears to be pretty strong circumstantial evidence of Wehrenberg's motive and purpose in filing the Motion to Join. For all these reasons, the second factor weighs considerably in favor of denying joinder.

The third factor addresses whether Wehrenberg will be injured if joinder is not allowed. Wehrenberg says that "[h]aving to juggle two lawsuits – one in federal court and another in state court – will cause significant financial injury to Plaintiff," and that "Wehrenberg will face an increase in litigation costs if he is forced to defend in two forums and not the preferred singular venue." ECF No. 25, at 6. District courts disagree about whether being required to litigate in two forums unduly prejudices a plaintiff. For instance, in *Sussman*, the court explained:

> Third, Plaintiff would not be unduly prejudiced in denying joinder, because Plaintiff is free to sue the four individual defendants separately, in state court. While parallel state and federal proceedings expend more judicial resources, the four individual defendants are not jointly and severally liable with Capital One and the two year statute of limitations for filing a separate . . . action against the individual defendants has not yet run.

---

[8] Wehrenberg's protestations notwithstanding. The additional count that Wehrenberg seeks to bring against Hyman, a breach of contract action, depends entirely on facts known to Wehrenberg since long before the original action was filed. *See* ECF No. 22, at ¶¶ 84–96.

10

*Sussman*, 2014 WL 5437079, at *5. In *City Line-Hamilton Builders, LLC*, the district court noted that the plaintiff might be injured by having to litigate the matter twice in two separate forums, and the court concluded that, "[a]lthough likelihood of a substantial injury is not present, this factor leans slightly towards plaintiff." *City Line-Hamilton Builders, LLC*, 2013 WL 1286187, at *8; *but see Davis v. Supervalu, Inc.*, No. 14-06505, 2015 WL 505423, at *3 (E.D. Pa. Feb. 5, 2015) ("If joinder had been denied, [the plaintiff] could be forced to litigate his claims in two separate fora even though those claims arise out of a single event and center on the same facts."); *Kahhan v. Mass. Cas. Ins. Co.*, No. 1–1128, 2001 WL 1454063, at *2 (E.D.Pa. Nov.14, 2001) ("If Skversky is not added as a defendant to the present action plaintiff will be forced to litigate two lawsuits at the same time, increasing her litigation costs tremendously.").

In these circumstances, the Court concludes that Wehrenberg will not be "significantly injured" by having to litigate his breach of contract claim against Hyman in a separate forum. *Hayden*, 586 F.App'x at 840–41. The Court reaches this conclusion for several reasons. First and foremost, given that there are no new facts as to any claim against Hyman, any theoretical harm flowing from the choice of either not suing Hyman at all or suing him separately in state court is vitiated by the reality that Wehrenberg did not sue him when this suit was filed in the first instance, when Wehrenberg knew all that he needed to know to sue Hyman. This is the most substantial demonstration that there was no imperative at all, from Plaintiff's standpoint, to sue Hyman and Metropolitan together. Second, by the time of oral argument, Hyman had been deposed, yet at argument Wehrenberg made not one peep about suing Hyman in this case or in another one, and his only stated need to amend at that time was to flesh out his estoppel argument as to the Policy's limitations period. In short, any concern about either suing Hyman at all, or in a separate lawsuit, is one not contained in Wehrenberg's litigation approach to date. The Court cannot conclude that his now having to sue Hyman in state court creates any

"significant injury" to him, since nothing in the record suggests that Wehrenberg had ever thought that there was.

Finally, the Court is to consider any other factor bearing on the equities. The Court notes that Wehrenberg did not seek to join Mr. Hyman as a defendant until after the oral argument on February 4, 2015. The Court cannot rule out the possibility that Plaintiff's counsel perceived that things perhaps were not going well at oral argument,[9] and so, after making a mid-argument oral motion for leave to amend his Complaint (on completely different grounds), Plaintiff's principal goal became getting back into state court. These circumstances, along with the fairly obvious intent of Wehrenberg to destroy diversity jurisdiction, and the dilatoriness with which joinder was sought, all counsel in favor of denying the Motion for Joinder. Whatever prejudice (if any) Wehrenberg may suffer from having litigate his claims against Hyman in a separate forum are outweighed by other relevant factors, not the least of which is the Defendant's choice of a federal forum via removal as recognized by § 1447(e). Therefore, Wehrenberg's Motion for Joinder of Additional Defendant (ECF No. 26) is denied. The Court also orders that all references to Hyman as an additional defendant shall be stricken from Wehrenberg's Amended Complaint (ECF No. 22).

Having denied Wehnrenberg's Motion for Joinder of Additional Defendant, the Court will also deny Wehrenberg's Motion to Dismiss for Lack of Jurisdiction (ECF No. 24). Without the presence of Hyman in the case, complete diversity remains, and the Court has jurisdiction pursuant to 28 U.S.C. § 1332. Wehrenberg's Motion to Dismiss is therefore denied.

---

[9] The Court candidly expressed its skepticism about this case at oral argument, noting: "Mr. Chontos, I rarely signal my pitches. I have grave doubts about your case -- not your case, your client's case. I have grave doubts about his veracity based on these pleadings. I have grave doubts about where we're headed here. I really do. This case has all of the indicia of an after-the-fact grab at insurance when things go bad with a tenant." ECF No. 29, at 25. The principal basis for the Court's observation was Wehrenberg's own pleading that he had been aware of the alleged vandalism for eight (8) months before he ever told Metropolitan about it and, in the interim, had seemingly given Mr. Hyman the green light to proceed with whatever it was that he was doing at the Sheryl Lane property. ECF No. 1-2, at ¶¶ 21–26.

Wehrenberg also filed a Motion to Amend Caption of Amended Complaint (ECF No. 23) in which he seeks to correct errors in the caption of his Amended Complaint (at ECF No. 22). The Court will grant that Motion, except as to the listing of Alphonso Hyman in the caption, since he is not going to be a defendant in this action.

## IV. **CONCLUSION**

For the reasons stated in this Opinion, Plaintiff's Motion for Joinder of Additional Defendant (ECF No. 26) is denied. The Court also orders that all references to Hyman as an additional defendant shall be stricken from Plaintiff's Amended Complaint (ECF No. 22). Likewise, Plaintiff's Motion to Dismiss for Lack of Jurisdiction (ECF No. 24) is denied. Finally, Plaintiff's Motion to Amend Caption of Amended Complaint (ECF No. 23) is granted, except as to the listing of Alphonso Hyman in the caption. Plaintiff shall file an Amended Complaint in conformity with this Opinion on or before April 23, 2015. Defendant shall respond pursuant to Fed. R. Civ. P. 12 within twenty-one (21) days thereafter.

An appropriate Order will follow.

Mark R. Hornak
United States District Judge

Dated: April 9, 2015

cc: All counsel of record